FILED - GR
October 7, 2011 3:10 PM
TRACEY CORDES, CLERK
U S DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY /s/ / Scanned

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

1:11-cv-1079
Gordon J Quist
U.S. District Judge

BRANDALEE DEWITT,

    Plaintiff,

v.

DELTA OUTSOURCE GROUP, INC.,

    Defendant.

_____/

## Complaint

### I. Introduction

1. This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection Practices Act ("MCPA"), M.C.L..§ 445.251 *et seq.* and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III. Parties

3. Plaintiff Brandalee DeWitt is a natural person residing in Osceola County, Michigan. Ms. DeWitt is a "consumer" and "person" as the terms are defined and/or used in the

1

FDCPA. Ms. DeWitt is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MCPA and MOC.

4. Defendant Delta Outsource Group, Inc. ("Delta") is a Missouri corporation, purportedly doing business at 1000 Lake St. Louis Boulevard, Suite 20, Lake St. Louis, Missouri 63367. The registered agent in Michigan for Delta is Incorp Services, Inc., 2285 South Michigan Road, Eaton Rapids, Michigan 48827. Delta has filed with the State of Michigan an Application for Certificate of Authority to Transact Business or Conduct Affairs in Michigan for the stated purpose of "Debt Collection." Delta uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Delta regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Delta is a "debt collector" as the term is defined and used in the FDCPA. Delta is a "regulated person" as the term is defined and used in the MCPA. Delta is a "collection agency" and a "licensee" as the terms are defined and used in the MOC.

### IV. Facts

5. Ms. DeWitt had a credit account with American General Finance ("AGF") which she used to obtain goods and/or services for personal, family or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA, MCPA and MOC.

6. AGF later claimed that Ms. DeWitt failed to pay the alleged debt in full.

7. Ms. DeWitt disputes the alleged debt.

8. Ms. DeWitt refuses to pay the alleged debt.

9. AGF or a successor in interest hired Delta to collect the alleged debt from Ms.

2

DeWitt.

10.  Alternatively, Delta purchased the alleged debt and related account after the account allegedly was in default.

11.  On or about August 29, 2011, a Delta employee telephoned Ms. DeWitt and stated that Delta was attempting to collect a debt from Ms. DeWitt in the amount of approximately $948.90. Ms. DeWitt stated that she did not remember the debt. The Delta employee stated that the debt was quite old and that he would obtain information regarding the debt and then contact Ms. DeWitt within the next forty-eight hours to discuss the matter.

12.  On September 20, 2011 at approximately 9:50 a.m., a Delta employee identified as Jeremy telephoned Ms. DeWitt's residence, spoke with Ms. DeWitt's mother and asked to speak with Ms. DeWitt. Ms. DeWitt's mother stated that Ms. DeWitt was at work. The Delta employee asked where Ms. DeWitt was employed. Ms. DeWitt's mother told the Delta employee the name of Ms. DeWitt's employer.

13.  On September 20, 2011 at approximately 7:19 p.m., Delta again telephoned Ms. DeWitt's residence, but no one was available to answer the call. Delta did not leave a message.

14.  On September 21, 2011 at approximately 9:08 a.m., Delta again telephoned Ms. DeWitt's residence, but no one was available to answer the call. Delta did not leave a message.

15.  On September 21, 2011 at approximately 1:19 p.m., Delta again telephoned Ms. DeWitt's residence, but no one was available to answer the call. Delta did not leave a message.

16.  On September 22, 2011 at approximately 10:50 a.m., Delta again telephoned Ms. DeWitt's residence, but no one was available to answer the call. Delta did not leave a message.

17.  On September 23, 2011 at approximately 8:16 a.m., Delta again telephoned Ms.

DeWitt's residence, but no one was available to answer the call. Delta did not leave a message.

18. On September 23, 2011 at approximately 2:48 p.m., Delta again telephoned Ms. DeWitt's residence, but no one was available to answer the call. Delta did not leave a message.

19. On September 23, 2011, Ms. DeWitt was working at her place of employment. Ms. DeWitt works on the shop floor. Ms. DeWitt's co-worker who answers telephone calls in the administrative office came out onto the shop floor and told Ms. DeWitt that a man had called Ms. DeWitt's place of employment multiple times that week and each time asked to speak with or have a message delivered to Ms. DeWitt. Ms. DeWitt's co-worker stated that each time she told the man that Ms. DeWitt's employer prohibited Ms. DeWitt from receiving such communications unless it was an emergency.

20. Between September 20, 2011 and September 23, 2011, one or more Delta employees telephoned Ms. DeWitt's place of employment, spoke with Ms. DeWitt's co-worker, and asked to speak with or have a message delivered to Ms. DeWitt. Ms. DeWitt's co-worker on multiple occasions told the Delta employee that Ms. DeWitt's employer prohibited Ms. DeWitt from receiving non-emergency telephone calls from third parties while Ms. DeWitt was working.

21. One or more Delta employees continued to telephone Ms. DeWitt's place of employment in efforts to collect the alleged debt from Ms. DeWitt, after being told that Ms. DeWitt's employer prohibited Ms. DeWitt from receiving non-emergency telephone calls from third parties while Ms. DeWitt was working.

22. One or more Delta employees telephoned Ms. DeWitt's place of employment in connection with efforts to collect the alleged debt from Ms. DeWitt.

23. The only reason that Delta and one or more Delta employees telephoned Ms.

4

DeWitt's place of employment was to attempt to collect the alleged debt from Ms. DeWitt.

24. Not one of the telephone calls placed by one or more Delta employees to Ms. DeWitt's place of employment was for an emergency purpose.

25. A debt collector may not communicate with a consumer in connection with the collection of any debt at a time or place known or which should be known to the debt collector to be inconvenient to the consumer. 15 U.S.C. § 1692c(a)(1).

26. A debt collector may not communicate with a consumer in connection with the collection of any debt at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication. 15 U.S.C. § 1692c(a)(3).

27. A debt collector may not threaten to take action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

28. Delta and its employee(s) violated the FDCPA by making multiple telephone calls to Ms. DeWitt's place of employment.

29. On September 23, 2011 at approximately 4:30 p.m., Ms. DeWitt telephoned Delta and spoke with a Delta employee identified as Jeremy. The Delta employee stated that Delta was attempting to collect a debt on behalf of American General Finance in the amount of approximately $942 and some change. The Delta employee stated that the Ms. DeWitt need to settle the debt that day. The Delta employee stated that the account had been closed since September of 2004. Ms. DeWitt stated that she did not owe anything because of the applicable statute of limitation. The Delta employee stated that he had been leaving messages for Ms. DeWitt at her place of employment. Ms. DeWitt told the Delta employee that her employer

prohibited personal telephone calls unless the matter involved an emergency. The Delta employee stated that Ms. DeWitt need to make payment arrangements in order to keep the matter form going further. The Delta employee stated that Ms. DeWitt needed to pay $158.00 per month for the next six months in order to settle the account. Ms. DeWitt stated that she would not pay that amount. The Delta employee stated that in that case, he would sign off the account and Ms. DeWitt would be sued for the full balance, plus court costs and attorney fees.

30. It is unlawful to file a time-barred collection suit against a consumer as well as to threaten to file such a suit. *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D. Ala. 1987).

31. The alleged debt that Delta attempted to collect from Ms. DeWitt was no longer judicially enforceable by operation of the applicable statute of limitation. Stated differently, the debt was time-barred.

32. The Delta employee wrongfully threatened that Ms. DeWitt would be sued if she did not pay the alleged debt, thereby violating the FDCPA and Michigan law.

33. On September 26, 2011 at approximately 2:05 p.m., the Delta employee identified as Jeremy telephoned Ms. DeWitt's cellular telephone. The Delta employee demanded that Ms. DeWitt make payment on the alleged debt. Ms. DeWitt stated that she could not make the requested payment.

34. Delta and one or more Delta employees continued to call Ms. DeWitt's residence in efforts to collect the alleged debt from Ms. DeWitt.

35. On October 3, 2011 at approximately 6:00 p.m., Ms. DeWitt telephoned Delta and spoke with a Delta employee identified as Jeremy. The Delta employee stated that Delta was

attempting to collect an account for American General Finance, #33157818. The Delta employee stated that the account had been opened June 27, 2001 and charged off on September 30, 2004 in the amount of $948.90. The Delta employee stated that Delta had received the account for collection on August 26, 2011. Ms. DeWitt stated that she was disputing the debt because she did not believe she owed it. Ms. DeWitt stated that she was disputing the debt by telephone. The Delta employee stated that to dispute the debt, Ms. DeWitt was required to dispute the debt in writing. The Delta employee stated that Ms. DeWitt had plenty of time since the account went delinquent to dispute the debt, implying that the time to dispute the debt had expired. Ms. DeWitt again stated that she was disputing the debt by telephone. The Delta employee stated that it doesn't work that way.

36. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute). The FDCPA allows the consumer to orally dispute a debt. *Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998). The FDCPA does not limit the time period for disputing a debt. A

consumer can always dispute a debt with a debt collector, regardless of the passage of time.

37. The Delta employee made false statements to Ms. DeWitt regarding the rights of a consumer to dispute a debt as afforded by the FDCPA.

38. The Delta employee made false statements to Ms. DeWitt regarding Ms. DeWitt's rights to dispute the debt.

39. The Delta employee falsely represented to Ms. DeWitt that Ms. DeWitt could not dispute the debt by telephone with Delta.

40. The Delta employee falsely represented to Ms. DeWitt that for Ms. DeWitt to dispute the debt with Delta, Ms. DeWitt was required to dispute the debt in writing.

41. The Delta employee falsely represented or falsely implied to Ms. DeWitt that the time for Ms. DeWitt to dispute the debt with Delta had expired.

42. Each Delta employee who spoke with Ms. DeWitt intended to speak the words the Delta employee spoke to Ms. DeWitt.

43. The acts and omissions of Delta and its employees done in connection with efforts to collect the alleged debt from Ms. DeWitt were done intentionally and wilfully.

44. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

45. Delta, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those

unlawful debt collection practices.

46. Delta and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

47. The repeated telephone calls by Delta and its employee(s) to Ms. DeWitt's place of employment caused Ms. DeWitt to suffer extreme embarrassment and humiliation, and harmed Ms. DeWitt's reputation and position at her place of employment.

48. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, physical stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

49. Plaintiff incorporates the foregoing paragraphs by reference.

50. Defendant violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant violated 15 U.S.C. § 1692b;

    b) Defendant violated 15 U.S.C. § 1692c

    c) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

    d) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted

       collection of a debt;

e)     Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f     Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

51.     Plaintiff incorporates the foregoing paragraphs by reference.

52.     Defendant violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a)     Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)     Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

c)     Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

d)     Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

### Count 3 – Michigan Occupational Code

53  Plaintiff incorporates the foregoing paragraphs by reference.

54  Defendant violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

c) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

d) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee;

e) Defendant violated M.C.L. § 339.918; and

f) Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

    b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

    c)      Statutory damages pursuant to M.C.L. § 339.916(2); and

    d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: October 7, 2011

_/s/ Phillip C. Rogers_
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com